# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **KAREN VAUGHNS, Individually and On Behalf of Others Similarly Situated,** | **Case No. 4:19-cv-02088** |
| **v.** | **Collective Action Pursuant to 29 U.S.C. § 216(b)** |
| **LGS STAFFING, LLC (LABOR GUYS, LLC)** | **Jury Trial Demanded** |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Karen Vaughns ("Vaughns") brings this nationwide collective action to recover unpaid overtime wages and other damages from LGS Staffing, LLC (Labor Guys, LLC) ("LGS") under the Fair Labor Standards Act ("FLSA").

2.      During the relevant period, Vaughns and other workers like her worked for LGS on an hourly basis and regularly worked more than 40 hours a week.

3.      But LGS failed to pay Vaughns and the other workers like her overtime as required by the FLSA.

4.      Instead, LGS paid Vaughns and the other workers like her the same hourly rate for all hours worked, including for those hours worked in excess of 40 in a workweek.

5.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this Action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division.

8.     LGS hired Vaughns in this District and Division.

9.     Vaughns performed work for LGS in this District and Division.

10.     Vaughns is a resident of this District and Division.

## THE PARTIES

11.     From approximately August 2017 through October 2018, Vaughns worked as an hourly employee for LGS performing manual labor relating to disaster-relief efforts.

12.     Throughout her employment, LGS paid Vaughns the same hourly rate for all hours worked, including for those hours she worked in excess of 40 in a workweek.

13.     Her written consent is attached as Exhibit A.

14.     Vaughns brings this Action on behalf of herself and all other similarly situated hourly employees who worked for LGS at any time during the last three (3) years who were paid the same hourly rate for all hours worked, including for those hours worked in excess of 40 in a workweek ("Putative Class Members").

15.     LGS is a Georgia limited liability corporation that specializes in the provision of disaster relief personnel throughout the Country, including in this District and Division.

16.     LGS may be served with process by serving its registered agent, Capitol Corporate Services, Inc., at 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

## COVERAGE UNDER THE FLSA

17.     At all relevant times, LGS was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all relevant times, LGS was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all relevant times, LGS was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, tools, walkie-talkies, and hardhats, that have been moved in or produced for commerce.

20.     At all relevant times, LGS had an annual gross volume of sales in excess of $1,000,000.

21.     At all relevant times, Vaughns and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## THE FACTS

22.     LGS specializes in the provision of personnel to perform disaster-related services.[1]

23.     To provide services to many of its customers, LGS retains workers to perform the services requested by its clients.

24.     Many of these individuals worked for LGS on an hourly basis, were paid the same hourly rate for all hours worked by LGS, including those hours worked in excess of a 40 in a single week, and make up the proposed Putative Class.

25.     Even if their job titles and precise job duties differed, LGS subjected the Putative Class Members to the same illegal pay practice for similar work and uniformly failed to pay them overtime for the overtime hours they worked.

26.     For example, Vaughns was an hourly employee of LGS from approximately August 2017 until October 2018.

---

[1] http://www.lgsstaffing.com/disaster-response-team/ (last visited on June 7, 2019).

27.     Throughout her employment with LGS, Vaughns' job duties consisted primarily of disaster-related manual labor including, but not limited to, removing sheet rock, carpet, furniture, and trash from residences.

28.     LGS paid Vaughns $11.00 per approved hour worked.

29.     Vaughns reported the hours she worked to LGS on a regular basis.

30.     If Vaughns worked fewer than 40 hours in a week, LPG only paid Vaughns for the hours she actually worked at her hourly rate of $11.00 per hour.

31.     But Vaughns normally worked more than 40 hours in a week.

32.     When Vaughns worked more than 40 hours in a week, LPG paid Vaughns for all of the hours she worked that week at her hourly rate of $11.00 per hour.

33.     LGS recruits, hires, supervises, controls, determines hours, sets pay, and approves Vaughns' and the Putative Class Members' timesheets.

34.     The daily and weekly activities of Vaughns and the Putative Class Members primarily consisted of manual labor-type job duties and were routine and largely governed by standardized procedures and checklists created or mandated by LGS and/or its clients.

35.     The hours Vaughns and the Putative Class Members worked are reflected in LGS' records.

36.     Like Vaughns, the Putative Class Members regularly worked more than 40 hours in a week.

37.     Rather than receiving time and a half as required by the FLSA, Vaughns and the Putative Class Members only received "straight time" pay for the overtime hours they worked.

38.     This "straight time for overtime" payment scheme violates the FLSA.

39.     Vaughns and the Putative Class Members were never paid on a salary basis. They were paid on an hourly basis. They never received any guaranteed weekly compensation from LGS

4

irrespective of hours worked (i.e., the only compensation they received from LGS was the hourly rate they were assigned by LGS for the hours they actually worked in a single day or week).

40.    LGS was aware of the overtime requirements of the FLSA.

41.    LGS nonetheless failed to pay certain hourly employees, such as Vaughns, overtime.

42.    LGS' failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

COLLECTIVE ACTION ALLEGATIONS

43.    LGS' illegal "straight time for overtime" policy extends beyond Vaughns.

44.    Numerous other LGS hourly workers were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

45.    It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

46.    LGS paid hundreds of hourly workers using the same unlawful scheme.

47.    The workers impacted by LGS' "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

48.    Vaughns and the Putative Class Members were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

49.    The Putative Class Members were paid in the same manner as Vaughns and were not properly compensated for all hours worked as required by state and federal wage laws.

50.    Based on her experience and tenure with LGS, Vaughns is aware that these illegal practices were imposed on the Putative Class Members.

51.     The Putative Class Members were not paid overtime when they worked in excess of 40 hours per week.

52.     The failure to pay overtime at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

53.     Vaughns' experiences are therefore typical of the experiences of the Putative Class Members.

54.     The specific job titles or precise job locations of the Putative Class Members does not prevent collective treatment.

55.     Vaughns has no interests contrary to, or in conflict with, the Putative Class Members.

56.     Like the Putative Class Members, Vaughns has an interest in obtaining the unpaid overtime wages owed under federal law.

57.     The precise size and the identity of other members of the Putative Class is ascertainable from the business records, tax records, and/or employee or personnel records maintained by LGS.

58.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the Lawsuit.

59.     Absent a collective action, many of the Putative Class Members will not obtain redress of their injuries and LGS will reap the unjust benefits of violating the FLSA.

60.     Furthermore, even if some of the Putative Class Members could afford individual litigation against LGS, it would be unduly burdensome to the judicial system.

61.     If individual actions were required to be brought by each Putative Class Member, it would necessarily result in a multiplicity of lawsuits and would create hardship to the Putative Class Members, to Vaughns, and to the Court.

62.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

63.     The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

  a.  Whether LGS required Vaughns and the Putative Class Members to work more than 40 hours during individual work weeks;

  b.  Whether the LGS' decision to pay the Putative Class Members straight time for overtime was made in good faith;

  c.  Whether Vaughns and the Putative Class Members were paid at a rate of one and one-half times their regular rate of pay when they worked more than 40 hours in a single workweek;

  d.  Whether LGS' violation of the FLSA was willful; and

  e.  Whether the illegal pay practices were applied to the Putative Class Members.

64.     Vaughns and the Putative Class Members sustained damages arising out of LGS' illegal and uniform compensation policy.

65.     Vaughns knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

66.     Vaughns will fairly and adequately represent and protect the interests of the Putative Class Members.

67.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## CAUSE OF ACTION

68.     By failing to pay Vaughns and the Putative Class Members overtime at one-and-one-half times their regular rates, LGS violated the FLSA's overtime provisions.

69.     LGS owes Vaughns and the Putative Class Members the difference between the rate actually paid and the proper overtime rate they should have been paid.

70.     Because LGS knew or showed reckless disregard for whether its pay practices violated the FLSA, LGS owes Vaughns and the Putative Class Members these unpaid wages for at least the past three years.

71.     LGS is liable to Vaughns and the Putative Class Members for an amount equal to all unpaid overtime wages as liquidated damages.

72.     Vaughns and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

73.     Vaughns demands a trial by Jury.

## PRAYER

74.     Vaughns prays for relief as follows:

a.      An order allowing this action to proceed as a collective action under the FLSA and directing notice to all hourly employees who worked for LGS in the last three years who received straight time for overtime;

b.      Judgment awarding Vaughns and the Putative Class Members all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

c.      An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

d.      All such other and further relief to which Vaughns and the Putative Class Members may show themselves to be justly entitled.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Lindsay R. Itkin**
Texas Bar No. 24068647
Federal ID No. 1458866
**Andrew Dunlap**
Texas Bar No. 24078444
Fed ID. 1093163
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
litkin@mybackwages.com
adunlap@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

9